UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK COX,

    Plaintiff,

v.

STEVEN RIVARD,

    Defendant.

Case No. 12-cv-15665
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Mark Cox was convicted of first-degree felony murder, Michigan Compiled Laws § 750.316, following a March 2010 jury trial in the Kalamazoo County Circuit Court. He filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 claiming that trial counsel was ineffective and that the jury instruction on the defense of accident was inadequate. (Dkt. 1.) Having reviewed the Petition, the warden's response, and the state-court record, the Court finds that the state courts reasonably concluded that petitioner's claims were without merit. The Court will thus deny Cox's petition.

**I. BACKGROUND**

Petitioner's convictions arise from Latonya Huff's death inside her apartment. Police found the victim "partially wrapped in a blanket or sheet, bound, and gagged." *People v. Cox*, No. 297532, 2011 WL 3592452, at *1 (Mich. Ct. App. Aug. 16, 2011). Petitioner's fingerprints were lifted from the victim's bedroom door. The victim's ATM card had been stolen and police retrieved security-camera footage from the business where the card had been used, leading them to Petitioner. Police then arrested Petitioner in the victim's car. Eventually, Petitioner confessed

to causing the victim's death. He stated that he "went into the victim's apartment with the intent to rob her; [he] bound and gagged the victim before leaving to use her ATM card, but when he returned later, the victim was dead." *Id.* Because Petitioner had confessed to his involvement with the binding and gagging of the victim, the central issue for trial was the level of his culpability; that is, whether he had the requisite mental state to be convicted of first-degree felony murder. (*See* Mar. 2, 2014 Tr. at 116.)

Following his conviction, Mr. Cox moved for a new trial in the trial court, on the ground that he had been denied the effective assistance of trial counsel. A hearing pursuant to *People v. Ginther*, 212 N.W.2d 922 (1973), was conducted on Cox's ineffective assistance of counsel claims on October 15, 2010. The trial court ruled that Petitioner had not been denied the effective assistance of counsel and denied Petitioner's motion for a new trial.

Petitioner filed an appeal of right, in which he raised the three claims that he presents in his current petition. The Michigan Court of Appeals affirmed petitioner's conviction. *People v. Cox,* No. 297532, 2011 WL 3592452 (Mich. Ct. App. Aug. 16, 2011).

Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, in which he raised the same claims that he raised in the Michigan Court of Appeals. The Michigan Supreme Court denied petitioner leave to appeal on December 28, 2011. *People v. Cox*, 806 N.W.2d 328 (2011) (table).

Petitioner filed his habeas petition on December 28, 2012. (Dkt. 1, Pet.) Cox seeks habeas relief on the following grounds: (1) trial counsel was ineffective when she failed to request an instruction on the lesser included offense of involuntary manslaughter; (2) trial counsel was ineffective for failing to object to the pathologist's use of the word "accident" or to request a jury instruction to clarify that the pathologist's use of the term to describe causes of

death had a different meaning than the term accident as used as a defense to the murder charge; and (3) the judge's instruction on the defense of accident was deficient because it did not inform the jurors that the prosecution had the burden of disproving petitioner's accident defense.

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which governs this case, "circumscribe[s]" the standard of review that federal courts apply when considering an application for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Under the statute, a federal court may not grant habeas relief to a state prisoner with respect to any claim that has been "adjudicated on the merits in State court proceedings" unless the state-court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Michigan Court of Appeals' decision on direct appeal was the last explained decision from the state courts "on the merits" of Cox's habeas corpus claims. Accordingly, the Court reviews that decision under the deferential standard of § 2554(d). *See Davis v. Rapelje*, 33 F. Supp. 3d 849, 855–59 (E.D. Mich. 2014).

## III. ANALYSIS

The Court first addresses Petitioner's ineffective assistance of counsel claims and then moves to his claim regarding the jury instructions. For the reasons that follow, the Court will not grant habeas relief on any of Petitioner's claims.

A. **Ineffective assistance of counsel**

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the United States Supreme Court set forth a two-prong test to determine whether a habeas petitioner has received ineffective assistance of counsel. First, the petitioner must prove that counsel's performance was deficient, meaning that counsel made errors so serious that he or she was not "functioning as the 'counsel' guaranteed the criminal defendant by the Sixth Amendment." *Id.* at 687. Second, the petitioner must establish that counsel's "deficient performance prejudiced the defense," meaning that counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

To succeed on the performance prong, Petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The reviewing court must "indulge a strong presumption" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 689–90. Petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689. In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

To satisfy the prejudice prong, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id.*

4

"When a state prisoner asks a federal court to set aside a sentence due to ineffective assistance of counsel . . . [Supreme Court precedent] require[s] that the federal court use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *accord Harrington*, 131 S.Ct. at 788 ("The standards created by *Strickland* and [section] 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal citation omitted)).

Cox's Petitioner presents this exact scenario. Therefore, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

### 1. Failure to request involuntary manslaughter instruction

Petitioner first contends that his trial counsel was ineffective for failing to request an instruction on the lesser included offense of involuntary manslaughter. Petitioner argues that his involvement in the victim's death was never contested, only the degree of his culpability. The trial court only instructed the jury on first degree felony murder and second degree murder. (Mar. 2, 2010 Tr. at 146–50.) Without a jury instruction on involuntary manslaughter, Petitioner argues, the jury in this case had no choice but to convict him of first-degree murder. He contends that had the jury been properly instructed, they would have convicted him of involuntary manslaughter instead of first-degree felony murder.

Under Michigan law, the elements of first-degree felony murder include "an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice)." *Matthews v. Abramajtys*, 319

F. 3d 780, 789 (6th Cir. 2003) (citing *People v. Carines*, 597 N.W. 2d 130 (1999)). The Michigan Supreme Court has indicated, "[A] jury can properly infer malice from evidence that a defendant set in motion a force likely to cause death or great bodily harm." *People v. Aaron*, 299 N.W.2d 304, 327 (Mich. 1980).

By contrast, "[m]anslaughter is murder without malice." *People v Mendoza*, 664 N.W.2d 685, 690 (Mich. 2003). "Under Michigan law, involuntary manslaughter is the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty." *Koras v. Robinson*, 123 F. App'x 207, 215 (6th Cir. 2005) (quoting *People v. Clark*, 556 N.W.2d 820, 822 (1996)). "Involuntary manslaughter is established if the defendant acts in a grossly negligent, wanton, or reckless manner, causing the death of another." *People v. Moseler*, 508 N.W.2d 192, 193 (Mich. 1993).

Petitioner's counsel indicated at the *Ginther* hearing that she had thought about requesting an involuntary manslaughter instruction but was afraid that the mental states for involuntary manslaughter and felony murder were too similar. (Oct. 15, 2010 *Ginther* Hr'g Tr. at 6–8.) Specifically, she thought that involuntary manslaughter's gross negligence component was too close to felony murder's malice element: that the defendant acted with wanton and reckless disregard that the likely consequences of his actions would be death or great bodily harm. (*Id.*) Counsel stated that she feared that had she presented an involuntary manslaughter defense, Petitioner would have been forced to admit to conduct that came close to satisfying the malice element required for a conviction under the felony murder statute. (*Id.*) So instead, counsel elected to present a defense of accident: that Petitioner did not intend the consequences of his actions. (Oct. 15, 2010, *Ginther* Hr'g Tr. at 6–8).

6

On these facts, the Michigan Court of Appeals rejected petitioner's ineffective assistance of counsel claim:

> While trial counsel's strategy did not work, defendant's trial counsel did have a thought-out strategy. That strategy was to focus on the accident defense because she was concerned that arguing involuntary manslaughter would be too close to what the prosecutor was arguing regarding the mens rea for murder. That is, such an argument might have served to support the prosecutor's malice argument. This Court will not substitute its judgment for trial counsel's based on the fact that the strategy did not work.

*Cox*, 2011 WL 3592452, * 1 (internal citation omitted).

The Court finds that the Court of Appeals reasonably applied the *Strickland* standard. A failure to request charges on all possible lesser included offenses may be proper trial strategy. *See Tinsley v. Million*, 399 F. 3d 796, 808 (6th Cir. 2005); *see also Colon v. Smith*, 723 F. Supp. 1003, 1008 (S.D.N.Y. 1989). Submission of lesser included offenses may give the jury a basis of finding a defendant guilty of a crime where the prosecution may be unable to prove the elements of the original crime beyond a reasonable doubt. Because counsel may have wished to avoid this possibility, particularly where the primary defense was that Petitioner was not guilty because the killing was accidental, the decision not to request lesser included offenses does not amount to ineffective assistance of counsel. *Colon*, 723 F. Supp. at 1008; *see also Harrop v. Sheets*, 430 F. App'x 500, 506–07 (6th Cir. 2011) ("[Counsel] could have decided not to request the voluntary-manslaughter instruction because he thought it would be futile, or because it would have diluted the other arguments he was advancing to the jury."). And even if it does, this Court cannot say that the Michigan Court of Appeals' contrary conclusion was unreasonable.

And while the Michigan Court of Appeals did not reach the issue, the Court also finds, under a *de novo* review, that Petitioner was not prejudiced by the failure to request instructions on involuntary manslaughter. *See Rayner v. Mills*, 685 F.3d 631, 639 (6th Cir. 2012) ("[W]hen a

7

state court decision relies only on one [*Strickland*] prong, the cases mandate AEDPA deference to that prong and de novo consideration of the unadjudicated prong."). There was overwhelming evidence to support a finding of malice aforethought rather than gross negligence: Petitioner admitted to tightly binding the victim's hands and feet with several belts, stuffing a full-size washcloth into her mouth, tying a gag through her mouth and around her head, tying a stereo cord around her neck and her hands and leaving the victim on the floor in a fetal position. The victim was tied so tightly that she could not move and she was gagged in a manner that she could not call for help. There was testimony that the stereo cord likely strangled the victim when she struggled to free herself. There was also testimony that the washcloth had been forced so far into the victim's mouth that it folded her tongue and pushed it to the back of her mouth, blocking off the back of the victim's throat. *See Clifford v. Chandler*, 333 F. 3d 724, 729 (6th Cir. 2003) ("From the evidence presented the jury could not have believed he was guilty of possession of drugs without finding him guilty of trafficking. The only evidence presented about Appellant's drug activities concerned his selling drugs, not his possession of them. Thus, he did not suffer any prejudice from the fact a lesser included offense instruction was not given to the jury."), *overruled in part on other grounds by Wiggins v. Smith*, 539 U.S. 510 (2003). Also, the jury was instructed on the lesser included offense of second-degree murder, but chose to find petitioner guilty as charged of first-degree felony murder. *See United States v. Valencia*, 188 F. App'x 395, 402 (6th Cir. 2006).

    **2. Failure to request clarifying instruction on the defense of accident**

Petitioner next argues that his counsel was ineffective because she failed to ask the judge to tell the jury that the pathologist's use of the term "accident" in the medical context had a different meaning from the legal defense of accident.

The medical meaning of the term "accident" came up during trial in the testimony of pathologist Dr. Joyce DeJong. She testified that an autopsy is conducted to determine the "cause of death" and the "manner of death." Although there can be numerous "causes of death," Dr. DeJong testified that there are only five terms to communicate the "manner of death," namely, "natural, accident, suicide, homicide, and in some cases indeterminate, meaning we can't tell." Dr. DeJong indicated that the "cause of death" in Petitioner's case was "strangulation and choking" and that the "manner of death" was "homicide." Dr. DeJong explained, "Homicide is a voluntary act by someone else that results in the death of another person." (Mar. 2, 2010 Trial Tr. at 38–39, 47–48).

On cross-examination, Dr. DeJong testified, "This wasn't an accident and this isn't a suicide. It was actions by another that resulted in this death." (*Id.* at 48).

Defendant's trial counsel then asked DeJong to explain what she meant by the term "accident."

> Q: And when you say it wasn't an accident, you mean she didn't tie herself up like Russian roulette only with a ligature?
>
> A: Right. . .
>
> Q: Is accident a legal term rather than a pathological term?
>
> A: Well, it's a term that's— It's one of the classifications. Accident is one of the possible classifications that is used by medical examiners in that the law allows us to classify deaths potentially as accidents. In this case, these—this is clearly a homicide where somebody has bound her and put things around her neck and that resulted in her death.
>
> Q: As opposed to someone stepping off a cliff and not realizing they were gonna fall an accident? But could you—have you ever diagnosed any accidents in your profession?
>
> A: Oh, many times, yes.

9

(*Id.* at 48). DeJong gave an example of an accidental death, a car crash, and indicated that the intent of the actor is not something she considers: "what the accused intends is actually something that is actually—I tend to stay away from that, if it's a voluntary action by that person that clearly results in the cause of death." (*Id.* at 50). Petitioner's trial counsel asked:

> Q: Is the intent a legal question for a jury, other than your expertise?
>
> A: Intent would be, yes, a question for the courts and the juries.

(*Id.* at 50). Dr. DeJong later testified that she only considers the acts that result in the victim's death, not the purpose or intent for which those acts were committed. (*Id.* at 50–52.)

Cox's trial counsel made her opening statement after Dr. DeJong testified for the prosecution. In her opening remarks, counsel argued that petitioner did not intend for the victim to die and that her death was an accident. She reminded the jury of Dr. DeJong's statement that petitioner's intent was a question that was "purely for the jury." (*Id.* at 58–59). Counsel explained the accident defense again to the jurors in her closing argument. (*Id.* at 129–133).

The judge gave the following instruction on the defense of accident:

> The defendant says that he is not guilty of first degree felony murder because LaTonya Huff's death was accidental. By this, defendant means that he did not mean to kill or did not realize that what he did would probably cause a death or cause great bodily harm. If the defendant did not mean to kill or did not realize that what he did would probably cause a death or cause great bodily harm, then he is not guilty of murder.

(Mar. 2, 2010 Trial Tr. at 149.)

The Michigan Court of Appeals rejected Petitioner's claim:

> Defendant alleges no proof or facts of prejudice. Furthermore, defendant shows no evidence that the jury was actually confused by the different meanings. Because defendant only points to a chance that the jury was confused and no proof, defendant has failed to establish that the judge's not instructing the jury about the usage of accident was a plain error that substantially affected the fairness of the proceeding.

10

> Furthermore, defendant's trial counsel saw a chance for confusion between the accident defense and the pathologist's use of accident. Therefore, she questioned the pathologist until he [sic] defined "accident" more as it pertained to his [sic] field. The trial judge concluded that this was sufficient to clear up any confusion. Beyond that, there was no evidence that the jury was actually confused on this issue.

*Cox*, 2011 WL 3592452, * 2.

The Court finds that the Michigan Court of Appeals reasonably reached its conclusion that Petitioner was not prejudiced by any error in failing to request a clarifying instruction. Even assuming that the pathologist's definition of accident was different from the meaning of accident in the context of a legal defense, the trial court gave the jury proper instructions on the legal definitions of first and second-degree murder and accident as a defense to murder. *See Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009) ("The prejudice prong of the ineffective assistance analysis subsumes the *Brecht* harmless-error review."); *see also United States v. Parris*, 243 F. 3d 286, 289 (6th Cir. 2001) (holding that any error in allowing a lay person to testify to whether an income tax scheme was 'illegal' was harmless because "its effect would have been overcome by the District Court's accurate, thorough, and clear instructions to the jury before it began to deliberate Parris's fate"). And further, defense counsel emphasized in her opening statement that a determination of Petitioner's intent would ultimately be a question for the jury to decide.

### B. Jury instruction omission

In his third claim, Petitioner argues that he was deprived of a fair trial because the judge did not instruct the jurors that the prosecutor had the burden of disproving Petitioner's accident defense. Respondent contends that this claim is unexhausted because it was not presented to the state courts as a federal constitutional claim. (Dkt. 9, Resp. Br. at 43.)

Even assuming that Petitioner's third claim has not been properly exhausted with the state courts, this Court may address it if it lacks merit. *See Burton v. Bock*, 239 F. Supp. 2d 686,

11

691 (E.D. Mich. 2002) (citing 28 U.S.C. § 2254(b)(2); *Cain v. Redman*, 947 F. 2d 817, 820 (6th Cir. 1991)). That is the case here.

In deciding if a purported defect in jury instructions was so prejudicial as to support a collateral attack upon the constitutional validity of a state-court conviction, the question is whether the instruction so infected the entire trial that the resulting conviction violates due process. *Henderson v. Kibbee*, 431 U.S. 145, 154–155 (1977). Thus, "[e]ven if there is some 'ambiguity, inconsistency, or deficiency' in the instruction, such an error does not necessarily constitute a due process violation." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (citation omitted).

The Court finds that Petitioner has not demonstrated that the purported defect in the trial court's instructions rose to the level of a due process violation. The judge made clear that the burden of proof rested with the prosecution: the judge instructed the jury that the prosecutor was required to prove each element of the crime beyond a reasonable doubt, that Petitioner was not required to prove his innocence, and that if they found that the prosecutor had not proven every element beyond a reasonable doubt, they had to find Petitioner not guilty. (Mar. 2, 2010 Trial Tr. at 139.) The judge later instructed the jurors on the elements of first-degree felony murder and the lesser offense of second-degree murder and instructed the jurors that the prosecutor had to prove every element of these crimes beyond reasonable doubt, including the element that petitioner intended to kill or do great bodily harm to the victim or that he knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his action. (*Id*. at 146–48.) The judge also acknowledged in the instructions that Petitioner claimed that he was not guilty of murder because the victim's death was accidental. The judge explained that if petitioner did not mean to kill the victim or did not realize that what

he did would probably cause a death or great bodily harm, then he was not guilty of murder. (*Id.* at 149.)

The jury instructions, taken as a whole, did not shift the burden of proof to Petitioner to prove that the killing was accidental. The instructions clearly informed the jurors that the prosecutor had the burden of proving all of the elements of the murder charge beyond a reasonable doubt, including Petitioner's intent. The judge also instructed the jurors that if the killing was accidental, then they had to find Petitioner not guilty of murder. Because the jury instructions as a whole explained that the prosecutor had to prove all of the elements of first and second-degree murder beyond a reasonable doubt, including the malice or intent element, the instructions did not place the burden of proof on Petitioner to prove that the killing was accidental. *See Fornash v. Marshall*, 686 F. 2d 1179, 1183–84 (6th Cir. 1982).

## IV. CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this Court's dispositive decision, "a circuit justice or judge" must issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because the Court has rejected Petitioner's habeas claims on the merits, to satisfy § 2253(c)(2), he must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). Given that the foregoing analysis of Petitioner's claims was fairly straightforward, the Court believes that no reasonable jurist would argue that he should be granted habeas relief. Accordingly, a certificate of appealability will not issue from this Court.

However, if petitioner chooses to appeal the Court's decision, he may proceed *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. CONCLUSION

For the foregoing reasons, the Court DENIES the Petition for Writ of Habeas Corpus and DENIES Petitioner a certificate of appealability. Petitioner is granted leave to appeal in forma pauperis.

> s/Laurie J. Michelson
> LAURIE J. MICHELSON
> UNITED STATES DISTRICT JUDGE

Dated: August 28, 2015

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 28, 2015.

> s/Jane Johnson
> Case Manager to
> Honorable Laurie J. Michelson